Final case this morning is the Travelers Indemnity Company v. Mcgann and Chester and Robert Lamb. Mr. Linehan. Good morning, Your Honors. My name is Matthew Linehan. I represent the appellant Travelers Indemnity Company in this matter. With permission of the Court, I'd like to reserve five minutes for rebuttal. Granted. Before the Court today is the question of whether an underinsured motorist policy, an individual who does not otherwise meet the prongs of the Pennsylvania Supreme Court, can still be determined to be occupying a motor vehicle simply because he was in the course and scope of his employment at the time of the injury. We submit that they cannot so hold and we submit further that the District Court erred in holding so. We think instead what the District Court should have done is apply each individual prong of Utica to the specific facts of this case. And had they done so, we feel they would have determined that Mr. Lamb, the appellee, was not occupying a vehicle because he did not meet the prongs of the test and therefore was not insured under the policy. Now, what the District Court seems to state and what the appellee is arguing is for a type of categorical approach here. It says essentially, as I understand it, that as long as an individual is in the course and scope of their employment, their vehicle-related employment, meaning a tow truck driver, ambulance driver, those types of jobs, as long as you're in the course and scope of your vehicle-related employment at the time you're injured, that's going to be sufficient to satisfy the Utica test. Now, we feel that this ignores the more than 28 years of case law that has developed under Utica. And these cases are, I think, are clear, many of these cases that deal with people in the scope of their employment. Being in the course and scope of your employment is relevant. It's absolutely relevant to the application of certain Utica prongs. However, it is not dispositive to any of the prongs. And it's certainly not dispositive for the entire test. I mean, there are numerous cases in the federal and state courts here in Pennsylvania that hold that an individual who was clearly in the scope of their employment, clearly doing something that was integral to their job at the time of the injury, and yet the courts hold, you're not occupying the vehicle because they applied the Utica test and find that he wasn't vehicle-oriented or was not doing something essential to the use of the vehicle. Let me just jump in there for a minute. You talk about the years and years of case law, but isn't it true that there are federal precedents that seem to support the notion that you're arguing against right now? I mean, I can give you the sites if it helps. I mean, Lin v. Westport, which is a not-presidential opinion of our court from 2007. There are some district court cases, St. Paul Fire and Marine v. Rind, Hartford v. Caparilla. Are you telling us that those cases are wrongly decided, or is there some critical distinction between this case and those cases? No. I mean, I think those cases taken as a whole, and there are a lot of them. I mean, there's a lot of case law where someone's in the course of their employment that comes up under this issue, clearly. And I think those cases taken as a whole are consistent with the argument that, again, some of these being in the scope of your employment can be relevant to certain factors under the Utica test, but they cannot simply supersede the Utica test. They cannot say, you know, it's not a parallel or a substitute test as the court so holds here. For instance, in Lin, out of this court in 2007, the district court in that case did find the person to be in the scope and course of their employment, and they did hold – I'm sorry. But they did a relatively rigorous Utica analysis in so holding, and the Third Circuit simply disagreed with that analysis, but the analysis was done. Here, there was no analysis at all. For instance, you know – Well, how do you distinguish this case from Lin, from our decision in Lin? Factually, I mean, I think all these cases in which someone in the course of their employment is determined to be occupying a vehicle. I mean, the tow truck – the vehicle at issue in Lin was the tow truck itself. Correct. Not the flatbed truck. Correct. And the tow truck was not going to be used to remove that vehicle. He was asked to help the other – the driver of the flatbed to get the vehicle onto the flatbed truck, and he gets struck by a passing motorist. Well, and I think it's important to note that Lin – that both vehicles, the tow truck and the flatbed – But the vehicle that – under which he's going to be insured as an underinsured motorist is the tow truck, not the flatbed truck. That was the court's ruling. Correct. But both vehicles were insured under the policy. In fact, in the opening – the opening of the opinion, it says we need – the court says we need to find only that he was occupying one or the other. The court focuses analysis on the tow truck, but I think it's – That would hurt you, though. Well, I disagree. I mean, I think it's a – The flatbed truck was the truck in use. Correct. Regarding that accident, so it would seem more logical that the flatbed truck would have been the policy that would have been accessed rather than the tow truck's policy. It was the same policy. It was all one policy. It was all one policy, because what happened was when the individual arrived to the scene, he realized the tow truck wasn't the right truck to use, so he called back to his employment, and they sent out another driver and another – But the fact remains, does it not, that our court, in a non-precedential case, seems to have focused on the course of employment test rather than a strict application of the four Utica factors. They did do that. So back to my other question. You're telling us Lynn was wrongly decided. It sounds like, to rule your way, we need to disagree with Lynn, which, unlike what I just told prior counsel, we are perfectly able to do if we so choose, because it's not an opinion of the court, it's just an opinion of the panel. Correct. I do think Lynn, in that particular, was wrongly decided. I think the proper analysis would have been analysis of the flatbed truck. Again, the vehicle he was operating – or, I'm sorry, also an insured vehicle, and the vehicle that he was actually working on at the time of the incident. In the other cases, what seems to be a distinguishing characteristic is that the individual who is ultimately found to be occupying the work vehicle is doing something to the actual vehicle. They're loading brush into it. They're loading garbage cans into the back of a garbage truck. So that's where you would have us draw the line? Because it appears to me a couple of things. Number one, Utica seems to focus the notion of the term occupying in a broad fashion, which obviously is antithetical to what you're suggesting. But the second thing, and probably the more important thing I'd like you to respond to, is it seems that the test that you create for us, or the line that you would draw, is one that's proximity. So if I'm 50 feet away from the car, but I'm on the phone conducting business, that's a situation that in your view is distinct from if I was talking to my wife, but I was right next to the car. Is proximity key? Is it what you're doing? Because you've alluded to the notion that if it's related to the business, that's a consideration, but it's not dispositive. Right. I think what is key is the actions of the individual at the time the person was injured. And that comes directly from the Utica case. And I focus in my brief on Proverbs 3 and 4, which says an individual has to be vehicle oriented, and they also have to be doing some transaction that's essential to the use of the vehicle. So I've got to be close to the vehicle and doing work related to the purpose of the vehicle. Absolutely. And I think with the exception of Lynn, which again I think can be made consistent if they had focused on the flatbed truck. But the other case is people who are found to be occupying the vehicles in their employment are doing something to the vehicles that the vehicle cannot do for itself. He was engaged in the process, though, right? I mean he was engaged in the process of doing his job to get this scofflaw vehicle booted. Exactly right. Put a sticker on the car. In this case there was an occupant in the vehicle, unfortunately for him. Correct. He absolutely was in the course and the process of his employment, undisputed. And he had to use this vehicle to get around to boot the scofflaw. The Utica test focuses on what he was doing related to the vehicle at the time of his injury. It does not say what he was doing related to his job or was he in the process of his employment. If I took these exact facts, our exact facts, but the call was to AAA because the vehicle I had been driving is no longer functional. I'm 100 feet away. Everything else is the same. What's the result? I think that's a much, much stronger case for the appellee because Wait a minute. Doesn't the appellee win in that situation? Right? Why doesn't the appellee win? It's a hypothetical, but I'm using the scenario you suggested. No. How come they don't win? I mean, if the phone call is related to, if the phone call It's what I just said. If it's essential to the use of the vehicle, which it sounds like it is The vehicle can't go anywhere. I'll call the AAA. I need help. Then I would say the appellee would win. The appellee wins. In that situation, yes. Not hypothetical. I'm over my time, Your Honor. All right. We'll hear you on rebuttal. Thank you. Mr. Goodrich. Thank you, Your Honors. May it please the court. My name is William F. Goodrich. I'm here on behalf of the appellee in this matter. And I would like to reserve two minutes for sir rebuttal if necessary. Not here. Not here? Okay. No problem for asking, but don't hold it against us. The worst thing that could happen if you ask, Your Honor, is someone says no. Before I begin, I would like to apologize to the court for some of the matters within my brief. On numerous occasions when rereading my brief, I saw that I spelt causal as casual. And as such, I would like the court to note that. Additionally, at one point in time on line 16 or page 16, line 19, I referred to exciting versus exiting. I'm sometimes excited when I exit, but generally not in the situation in this case when he's exiting the car. And I apologize to the court for those mistakes. I wish to indicate to the court that this matter involving the employment issue being raised by counsel in this matter is a red herring to this entire matter. These cases that the counsel seems to indicate are supported only because they are in the course of an employment is wrongly reasoned. The matter is throughout this case, throughout the cases in the Third Circuit, throughout the LEND, throughout the district court case at Benchcoff, and throughout the Stonington case out of the Eastern District, the court has made a specific investigation as to the specific use of the vehicle and the individual's reason for being outside of the vehicle in relation to the vehicle. It is not because he is in the course of his employment. Benchcoff did not indicate that he was in the course of his employment. It indicated strictly that he was outside of the car specifically to get directions in order to continue. So this idea of it being an employment is incorrect. It is a specific investigation by each court as to the reason why the individual is outside of the vehicle and if that being outside of the vehicle is involved with an essential transaction of that specific vehicle. Well, Utica says normally associated with the immediate use of the auto, right? Of that auto, individual auto. Not auto in general, Your Honor, but that particular auto. And that is why counsel tries to link all of this to some type of employment issue. It happens that the cases that the court has found relevant in this matter, and the lower court has found relevant in this matter, all deal with specific instances that require the individual in the operation of that specific vehicle to be outside of the vehicle as part of the operation of that vehicle. The tow truck driver, the garbage truck driver. Tell us here how this relates to the language that I've just read to you. The facts here, normally associated with the immediate use of the auto, and if you would then tell us how Curry doesn't create an impediment for you. Well, Curry, Your Honor, is specifically dealing with an individual whose job is to go out and take readings of the ground. It has nothing to do with how he gets there or that the vehicle there is necessary for that particular activity. So he could have walked out and taken readings of the ground. He could have walked out there. He could have been driven out there. And Mr. Lamb could have walked around town and taken license plates. It's a convenience. Certainly, it's more efficient. But driving around in a tow truck was not necessary to him performing his job, was it? Yes, it was, Your Honor. It was the booting truck because contained within the truck was the computers that required him to assess what vehicles had an opportunity to be booted. They had the radar. They don't always use computers, the record indicated. I understand why they do. It's very efficient. But they don't always use computers. Well, that was what the specific use of that vehicle was for. And when he was with that vehicle, the infrared would charge, would run onto the light or the license plate, would tell them we've got a hit. They pull back in. They check it against the computer if it's on that list. And it's already on that list. That's why the hit shows up. But then as part and parcel of that particular job relating to that specific truck, he was to get out and verify the VIN number on that vehicle. Just as Curry was to drive around and get out of the truck and make his readings. I mean, it wasn't – But there was no connection with Curry in the truck. It's hard to argue that it was feasible for Curry to do his job without driving around the runway with a truck with a yellow light on top. And similarly, it's hard for Mr. Lenihan to argue that it was feasible for Mr. Lamb to effectively do his job unless he's riding around in the McGann and Chester tow truck. There seems to be parallelism between the two cases. But there's a specific difference in this matter, Your Honor, because the Curry going out and doing the readings, okay, do not relate to the specific use of the vehicle. And the reason, if you look at Benchcoff, Benchcoff says, hey, look, we look at why he is outside of the vehicle. Is he outside of the vehicle because of a specific use related to the vehicle? Yes. He has to check the VIN numbers. Not only that, he has to make sure that the guy who's doing the actual booting is not run over or injured by the driver. His vehicles are right next to him. This vehicle – and it also looks as – does he have – if you look back at the Utica, is he severed all relationship with the vehicle? No. No. The vehicle is there. This is a temporary stop. Same with Curry. Now, Curry could be – Curry's getting out of his car and he's driving about, getting out of the vehicle, checking things. Lamb is driving about, getting out of the vehicle, checking things. To get back in the vehicle and move on because – And Curry gets in and out. Every time he takes a reading, he gets back in. He drives to another part of the runway. One of the things that's fascinating to me about this case is you've got, what appears to me to be two different tests, and the federal cases seem to support your position and the state cases seem to support Mr. Lenninghan's position. Is that incorrect? I do not believe so, Your Honor. I believe the Utica case also supports our position because it does not talk about specifically occupying the vehicle. Well, I'm with you there. I mean, occupying is – you know, this is one of these cases where the word occupying in the dictionary is different than what the Utica test tells us it means. But what about Curry and Pettica or Pettica? Those two state cases, you've got to get around those two, don't you? I believe, Your Honor, it looks at is he vehicle-oriented or is he highway-oriented? Has he severed all of his particular activities with the vehicle? If there's a Tyler case that's referred to in Utica also and is referred to within the text of the opinion, but Tyler says he has to have severed all of his relationship with the vehicle to become highway-oriented. In this case, the vehicle is – and it's very fact-specific on all of these cases, Your Honor. It's not like a broad rule. You have to look at the facts specifically. In this particular case, Lamb's vehicle is parked in the travel portion of Murray Avenue and Squirrel Hill. It is blocking traffic and is there specifically for a time period of from 45 seconds to five minutes, which is testified to by the driver. We get in, we line it up, we verify, we throw it on, and we get out of there because they try to avoid, quite frankly, any confrontation with any of the drivers that are going to boot. So it's a bang-bang operation. So what they do is are they vehicle-oriented? Yeah, they're right there. They're blocking traffic. And the idea is get in, get out. And it's the same thing that has been spoken about in terms of why is he out of the vehicle. He's out of the vehicle to verify. What is his intent? His intent is to get back into the vehicle and leave again. But the verification, all that is perfectly correct. But, I think this is a big but perhaps, the vehicle orientation, I thought, under the Utica test was in order to enter, use, or exit the vehicle. And as you just described, you're saying that he's checking the VIN number, he's checking the license plate, he's writing up the information. None of that relates to, is not in order to enter, use, or exit the vehicle. All contrary, Your Honor. Use, to use that vehicle, part and parcel of using that vehicle is to verify that the booting is to be applied to that car. And you have to get out and verify the same, not only verifying the VIN numbers, but also to call into the parking authority to verify that that has not changed since they got the computer readout that morning. So you want us to relate it to employment then? In this particular matter, yes. But I'm trying to point, I want to point out to the court, the counsel's broad spectrum here of painting this as just has to be employment related is not correct. Let me ask you this question, okay? Your client gets out and does two things, checks the VIN and all the other things he needs to check, right? Then he calls his girlfriend. And I'm not talking, suggesting that he calls his wife or whatever. That's not my point. He calls his girlfriend. It's my hypothetical. He calls his girlfriend, right? And when he calls his girlfriend, that's when it happens. Yeah, I don't think he's entitled at that point in time because at that point in time, I think he's on a frolicking detour from his employer. Even though he hasn't moved. Even though he hasn't moved. He's still in the exact same position. I want to make sure that we're clear because. We're getting back into that issue then of making it specifically employment oriented. And I don't think it's specifically employment oriented. It's vehicle oriented. If you don't think it's specifically employment oriented, then your position should be that since he was standing there to do the, he alighted from the car. Relating to the truck though, Your Honor. Vis-a-vis the truck, he's in the same position. But he does his thing and then he picks up the phone. When he picks up the phone, now you're saying, well, it's not employment related. He's not covered. If he's picking up the phone and relating to duties relating to the truck, okay? That's where I think it has to be because it's the truck. Not necessarily the duties of employment, but the duties associated with the truck. The duties associated with the tow truck and the other. So if he was calling his office from the same position to inquire about overtime, then you would say he's not covered. I would have a hard time arguing that point on his behalf at this point in time because of a frolicking detour as to the activities related to that specific truck and his duties related to that specific truck. Okay? I mean, everything here, the factual basis in this case is agreed upon. All of the facts point to a situation where all of the activities he did were essential to the use of this truck. He had to drive around Pittsburgh for the purposes of booting, scoff law. He had to scan it to see if cars were on the list. The computer was updated every morning. The plaintiff's job is to verify the plate number and the amount owed. He still affixes a sticker to the window of the car so that they warn the car, and then they're to get back in the car and take off. He is also supposed to, under the testimony here, protect the driver. And Armento, the driver, said the duties of the plaintiff required him to exit the vehicle to protect the booter. So the duties of the tow truck driver requires him to get out of the vehicle to hook up the vehicles for a tow. And so there's a straight analogy between the cases here in the Western District, the Eastern District, and in the Third Circuit. Although I agree that Lynn is not precedential, it does go through and discuss the same individual determination made on each and individual facts as to the specific use of the vehicle. Judge Hartman's question maybe five minutes ago was, can you reconcile Lynn, on the one hand, with Petika? Petika. I cannot. I think Lynn was correctly decided. I don't think Petika was. I think Lynn looked at specifically the instances. Well, my goodness. I don't know how that helps you because we have to follow Pennsylvania law. Pennsylvania law as determined by the court in both the Downington case and both in Benchoff are specific as to those particular facts and discusses Petika in those. But it also makes a determination that you have to look specifically in each and every instance. There's not a broad test to be applied. The broad test is, why is he out of the car and is it related to the use of the motor vehicle? And these are really what we're arguing about here because one rolls over into the other. Vehicle orientation rolls over into the use of the vehicle in terms of how you determined the last two prongs. I do not believe there's any argument here by counsel for the defense or excuse me for the plaintiff, I'm sorry, I'm not used to arguing for this position, that the first two prongs of Utica is met. No, I think that's a given. Let me ask you something I'm going to ask Mr. Linehan so he'll have an easier time answering it since he gets the advance notice. I know you both sought summary judgment, cross motions, but from time to time when I was a trial judge and my colleagues were trial judges a lot longer than I was, you'd get cross motions and then you'd realize that you needed to have some discovery. Why isn't this a case that in light of all that we've been discussing here, wouldn't it be good to get a nice detailed factual record so we know exactly what we're dealing with? Judge, I believe the facts were well developed here. We took depositions in this matter and the factual matters involved here are specifically agreed to by the parties. So there's no dispute on the facts? There's no dispute on the facts, Your Honor. I mean, the facts were developed by the parties through depositions. I took Mr. Argento's deposition. He was the driver of the truck who would put the boot on there. And I don't believe we need any other facts on the determination here, Judge. I mean, I think we've developed the facts sufficient for the court to make a ruling and apply the law and apply the test that this court has utilized in both the district courts in the east and the west of the state and out of this court as here. Thank you, Mr. Goodrich. Thank you, Your Honor. Mr. Lamb, would you like to begin by agreeing or disagreeing with Mr. Goodrich about whether a trial for the factual development or trials required? I would agree with Mr. Goodrich. I think the facts are well developed. And I really think the only relevant facts are what Mr. Lamb was doing at the time of his injury. And that has been – I think we agree on that. Honestly, I think he's admitted to all of our facts. And I think they boil down to, while clearly Mr. Lamb was in this course of his employment and clearly he was doing something essential to his employment, we do not think he was oriented towards the vehicle at all. And more strong of an argument, I think, is he was doing nothing to the vehicle that was essential to its use. Counsel has conflated this idea of employment and the truck. Mr. Lamb's employment is much broader than this particular truck. Well, actually, counsel's argument was a little confusing to me because it seemed like he agreed with you on this point. The hypothetical I posed was, if he was doing what he was doing in the facts here, he'd be covered. But if he was calling back to the home office inquiring about overtime, he would not be covered in that instance. Would you agree with that conclusion as well? I mean, obviously you don't agree with the first one. I get that. Whatever makes me – no. No, yeah, I would agree. But I think probably for a different reason. I mean, he draws a line, apparently, between what they're talking about on the phone, but I draw the line way before, is that he had severed his connection with the truck at that point. Using that telephone has nothing to do with that truck. Part of his employment, undoubtedly, has nothing to do with the truck. It's not essential to the operation of that truck. It's not dependent on that truck for any reason. I mean, he's making a telephone call. He has severed his tether. At the end of the day, Utica is the law here, and Utica laid out the test. Utica doesn't mention employment. Go ahead. You mentioned Utica as the law, and in the Lynn case, although it's non-precedential, and it's written by a dearly departed colleague of mine, Judge McClure, he looked at Pettica and he looked at Utica and he said, Pettica didn't follow Utica faithfully in our judgment, and we're not going to follow Pettica because we think it's wrong. He decided, what do we do with that? Well, respectfully, I disagree with the Lynn court in that particular. I think Pettica was correctly decided. Pettica went through a rigorous Utica analysis and came to the conclusion that, yes, these people, although you can argue about this, and I tend to agree that these people were in the course of their employment. Any decent employee would do what those employees did in Pettica, but they simply were not related or oriented to their vehicle. They were not doing anything essential to the use of the vehicle. Cleaning up sandbags in the middle of the road, while it may make you a good employee, is not essential to the use of the vehicle. The, I don't know if I'm pronouncing it right, but the Jakaluska case out of the Middle District in 2003, it's a footnote, but a footnote seven, it's a dump truck case. They actually define what is the essential use of a dump truck, because that is prong number four. But that case is, he was injured while exiting the dump truck, right? Correct. Well, that's the easy case. This is the hard case. I understand, but they actually define what is the use of the dump truck. And they say it's to load it, to carry it, and to dump it. They don't say. And what's the use of the tow truck here? The tow truck is, it's actually not a tow truck. It's actually, it's just a van with cameras attached to it. But the point of the van was to drive Mr. Lamb around to find vehicles. And like you said, it had an efficient system of computers to scan the plates, but it doesn't, Mr. Lamb's employment was much broader than the use of the van. Isn't Jaskolouska a case that you can't get around because they, of the definition of occupying there? No, I think Jaskolouska was a case that, while the person is clearly in the scope of their employment, they go on and do a rigorous Butika analysis. And that's what we're asking for here. We're simply asking to apply Butika to the specific facts of this case. For instance, you know, while I've been convinced, I've been persuaded that Mr. Lamb was in the course of his employment, I still don't know, what was Mr. Lamb doing that was essential to the use of the truck? I know what he was doing that was essential to his employment. I don't know what he was doing that was essential to the use of the truck. I know why the truck was essential to him. I don't know what he was doing at the time he was injured on the phone that was essential to the truck. And I still don't know that after all, because they simply haven't put that forward. My time has expired. Any other questions? Yeah. All right. Thank you, Mr. Linehan. Thank you, Goodrich. Case was very well argued. Excuse me one second. Stay right there one minute.